<u>**CONTINUING GUARANTY AGREEMENT**</u>

**COMPANY: CROSBY DREDGING, LLC**

WHEREAS, the undersigned (hereinafter referred to as the "<u>Guarantors</u>," whether one or more) have agreed to guarantee, jointly and severally, the payment of all credit heretofore or hereafter extended and all advances heretofore or hereafter made by Regions Commercial Equipment Finance, LLC ("<u>RCEF</u>"), Regions Equipment Finance Corporation ("<u>REFCO</u>"), Regions Bank ("Bank") and/or Regions Equipment Finance, Ltd. ("<u>REFLP</u>") to Crosby Dredging, LLC (hereinafter referred to as the "<u>Company</u>"), and of all other Liabilities (as hereinafter defined) of the Company to REFCO, the Bank and/or REFLP (the Bank, RCEF, REFCO and REFLP are hereinafter collectively referred to as "<u>Regions</u>").

NOW, THEREFORE, because the Guarantors will be benefited by the success of the Company and in consideration of the premises, the entering into of the Loan Agreement (as hereinafter defined), in order to induce Regions to extend to the Company from time to time such extensions of credit, advances, interest rate protection agreements and forbearances as Regions in its sole discretion may deem prudent and wise; and for other good and valuable consideration, the adequacy, sufficiency and receipt of which are hereby acknowledged, the Guarantors agree as follows: the Guarantors, jointly and severally and solidarily, unconditionally and absolutely hereby guarantee the due and punctual payment to Regions when and as the same shall become due and payable (whether by acceleration or otherwise) of the following (collectively, the "Liabilities"): all present or future indebtedness, obligations and liabilities of the Company to Bank, REFCO, RCEF and/or REFLP of every kind, character and description whatsoever, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter incurred, contracted or arising, joint or several, liquidated or unliquidated, regardless of how they arise or by what agreement or instrument they may be evidenced or whether they are evidenced by any agreement or instrument, and whether incurred as maker, drawer, endorser, surety, guarantor or otherwise, including, without limitation, all of the Company's obligations under or with respect to the Loan Agreement of even date herewith any promissory notes and all other documents executed in connection therewith (collectively, the "<u>Agreement</u>"), under all Hedge Obligations (as defined in the Agreement) and all other leases, financings or interest rate protection agreements entered into by the Company and Regions, and any and all extensions and renewals of all or any part of the same. The Guarantors will liable with the Company and each other guarantor for all Liabilities.

The Guarantors further jointly and severally agree that, in the event Regions grants to the Company one or more extensions or renewals of any of the Liabilities, or any part thereof, or permits or requires any other modification in any of the terms of the Liabilities, or any part thereof, in any manner which may be acceptable to Regions, with or without notice to the Guarantors, this guaranty shall, and is hereby made to extend to and cover such extended, renewed or modified Liabilities, on whatever terms and conditions the same may be extended, renewed or modified, and without regard to the number of times or the manner in which the same may have been or shall be extended, renewed or modified.

The Guarantors further jointly and severally agree (a) to pay any and all of the Liabilities upon demand at any time after maturity thereof (whether by acceleration or otherwise), including, without limitation, all rent or periodic payments due under the Agreement and all other obligations for payments to, or for the benefit of, Regions under the Agreement; (b) to be bound by all of the terms and provisions appearing on the face of any instrument or agreement evidencing, securing, guaranteeing, or executed in connection with any of the Liabilities and of any renewal instrument or agreement (collectively, the "<u>Documents</u>") (including any terms waiving notice and agreeing to pay costs and expenses of collection in the event of default) just as though the Guarantors had signed such instrument or agreement; (c) that Regions will not be required first to resort to the Company or any other maker, endorser, surety, guarantor or other Guarantor (Company and each such company, maker, endorser, surety, guarantor, or other Guarantor being hereinafter individually called an "<u>Obligor</u>") or to the security pledged or granted to Regions by any instrument or agreement, or otherwise assigned or conveyed to it, but in case of default in the payment of any of the Liabilities Regions may forthwith look to the Guarantors jointly and severally for payment under the provisions hereof; and (d) that Regions' enforcement of the Guarantors' obligations hereunder shall not be stayed or otherwise delayed by any claim (including without limitation, a counterclaim) that any Obligor may have against Regions. Guarantors waive all rights of division and discussion.

The Guarantors hereby further jointly and severally agree that the obligations of the Guarantors hereunder are absolute, unconditional, present and continuing guaranties of payment and not of collectibility, and shall not be subject to any counterclaim, recoupment, set-off, reduction or defense based upon any claim that the Guarantors, or any of them, may have against the Company, the Obligors or Regions and shall not be discharged, impaired, modified or otherwise affected by (a) the unenforceability, non-existence, invalidity or non-perfection of (i) any of the Liabilities, (ii) any Documents, (iii) any renewal instrument or agreement or (iv) any lien, pledge, assignment, security interest or conveyance given as security therefore; (b) any understanding or agreement that any other person, firm or corporation was or is to execute this Guaranty or any other document evidencing, guaranteeing or securing the Liabilities, or any part thereof; (c) Regions' resort or failure or refusal to resort to any other security or remedy for the collection of the Liabilities, or any part thereof; (d) the sale, exchange, release, surrender, or impairment of any collateral or other security for the Liabilities, or any part thereof; (e) the death, insolvency or bankruptcy of any Obligor or the failure of Regions to file a claim against such deceased or bankrupt Obligor's estate for such Obligor's liability or obligation to Regions; (f) any modification, amendment, supplement, or change in the status or terms of any of the Liabilities or any collateral or other security for the Liabilities, or any part thereof; (g) any default by the Company in payment of any of the Liabilities; (h) any compromise, settlement, release, discharge, termination, waiver, or extension of time for payment, performance, or observance of, any obligation of any Obligor with respect to any of the Liabilities; (i) the application of any payments, proceeds of collateral or other sums to any of the Liabilities in such order as Regions may elect; (j) any exercise or non-exercise of any right, remedy, power, or privilege of Regions with respect to any of the Liabilities or any collateral or other security therefore; (k) any failure, omission, delay, or lack of diligence on the part of Regions to enforce, assert, or exercise any such right, power, privilege, or remedy; (l) any claim (including, but not limited to, a counterclaim) that any Obligor may have against Regions; or (m) any other event, circumstance or condition, whether or not the Guarantors, or any of them, shall have notice or knowledge thereof.

The Guarantors further jointly and severally agree that it shall not be necessary for Regions to give any Guarantor notice of or to obtain consent or approval of any Guarantor in connection with, (a) the making of any advances or any extensions of credit or the terms thereof, or of any renewal or extension of or other modification with respect to the Liabilities, or any part thereof; (b) any of the matters described in clauses (a) through (m) of the preceding paragraph; or (c) Regions' acceptance of and reliance on this Guaranty. The terms hereof shall inure to the benefit of the successors and assigns of Regions and shall be binding, jointly and severally, upon the Guarantors, their heirs, executors, administrators, successors and assigns.

**Exhibit C**

Neither any failure nor any delay on the part of Regions in exercising any right, power or privilege under this Guaranty shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise or the exercise of any other right, power or privilege. No modification, amendment or waiver of any provision of this Guaranty shall be effective unless in writing and signed by a duly authorized officer of Regions, and then the same shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Guarantors in any case shall entitle the Guarantors to any other or further notice or demand in the same, similar or other circumstances.

The Guarantors jointly and severally hereby agree to indemnify and hold Regions harmless against any loss or expense, including reasonable attorneys' fees and disbursements, that may result from any failure of any Obligor to pay any of the Liabilities when and as due and payable or that may be incurred by or on behalf of Regions in enforcing payment of any of the Liabilities against any of the Guarantors or any of the Obligors.

In addition to all liens upon, and rights of set-off against, any moneys, securities, or other property of the Guarantors given to Regions by law, Regions shall have a lien upon and a right of set-off against all deposits, moneys, securities, and other property of any of the Guarantors now or hereafter in the possession of, or on deposit with, REFCO, RELP, Regions Bank, or any affiliate of either of them, whether held in a general or special account or deposit, for safekeeping, or otherwise; and every such lien and right of set-off may be exercised without demand upon or notice to the Guarantors.

Each of the Guarantors who now is or hereafter becomes an "insider", as defined in 11 U.S.C. §101 (or any amendment or successor thereto or replacement thereof), of the Company hereby waives and relinquishes all rights (including, without limitation, rights of subrogation) that such Guarantor now has or hereafter may have to recover from or be reimbursed by the Company or the Company's property, or from any person, firm, or corporation that may now or hereafter have such a right to recover from or be reimbursed by the Company or the Company's property, any amounts paid by such Guarantor to satisfy, in whole or in part, the Liabilities. The provisions of this paragraph are made for the express benefit of the Company as well as Regions and may be enforced independently by the Company.

The Guarantors further jointly and severally agree that this Guaranty shall remain in full force and effect until revoked or terminated by a written instrument, signed by the Guarantors and delivered to Regions and acknowledged in writing by Regions, and even after any such revocation or termination, shall be and remain effective as to any Liabilities then outstanding; and that this Guaranty shall not be construed as being terminated by payment in full of the Liabilities to Regions, if, thereafter, in the absence of written revocation or termination by the Guarantors acknowledged by Regions, the Company obtains or incurs additional or new Liabilities. Notwithstanding the foregoing sentence, this Continuing Guaranty Agreement and the Guarantors' obligations hereunder shall continue to be effective or be automatically reinstated, as the case may be, any time payment of all or any part of the Liabilities is recovered (a "Recovered Payment") from Regions as a result of a preference or other claim made under any bankruptcy, insolvency, dissolution, liquidation, reorganization, receivership, or similar law or otherwise. The collateral, if any, securing this Continuing Guaranty Agreement may be held by Regions until it is satisfied that all time periods during which the payment of all or any part of the Liabilities may be recovered from Regions as a result of a preference or other claim under any bankruptcy, insolvency, dissolution, liquidation, reorganization, receivership, or similar law or otherwise have elapsed. Each Guarantor will notify Regions immediately and in writing if such Guarantor's mailing address changes.

Any act or circumstance that shall toll any prescriptive period or statute of limitations applicable to the Liabilities, or any of them, shall also toll the statute of limitations applicable to the Guarantors' liability for the Liabilities under this Continuing Guaranty Agreement.

The term "Guarantors" as used herein refers to the undersigned, whether one or more natural persons, corporations, associations, partnerships, or other entities.

This Guaranty shall be governed by, and construed in accordance with, Louisiana law. THE GUARANTORS HEREBY WAIVE ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING UNDER THIS GUARANTY. Nothing in this paragraph shall affect the right of Regions to serve legal process in any other manner permitted by law or affect the right of any party to bring any action or proceeding in the courts of any other jurisdiction.

This Guaranty and the other Documents contain the entire understanding and agreement between the Guarantors and Regions with respect to the obligations of the Guarantors hereunder and supersede any prior agreements, understandings, promises, and statements with respect to such obligations.

The provisions of the Keepwell Addendum hereto are incorporated herein and shall form part of this Guaranty.

May 28, 2021

CROSBY ENTERPRISES, INC.

By: Kurt Crosby
Title: Member

## Keepwell Addendum to Continuing Guaranty Agreement

This Keepwell Addendum is made contemporaneous with the Continuing Guaranty Agreement dated as of May 28, 2021 made by CROSBY ENTERPRISES, LLC (the "Guarantor") in favor of Regions Bank, Regions Commercial Equipment Finance, LLC, Regions Equipment Finance Corporation and Regions Equipment Finance, Ltd. (the "Guaranty") and is incorporated therein in its entirety. In addition to, and without limitation of, any other debts, liabilities and Obligations, Guarantor hereby absolutely, unconditionally and irrevocably undertakes to provide such funds or other support as may be needed from time to time by the Company and any other Borrower to honor all of its obligations in respect of Hedge Obligations (provided, however, that Guarantor shall only be liable under its undertaking pursuant to this Keepwell Addendum for the maximum amount of such liability that can be hereby incurred without rendering such Guarantor's obligations and undertakings under the Loan Documents to which it is party, voidable under the Federal Bankruptcy Code and other applicable Debtor Relief Laws, and not for any greater amount). The obligations and undertakings of Guarantor under this Keepwell Addendum shall remain in full force and effect until payment in full of the Obligations and the termination of all Hedge Agreements that are Hedge Obligations. Guarantor intends that this Keepwell Addendum (and any corresponding provision of any Loan Document, applicable guaranty, security instrument, other security agreement or other guaranty agreement) constitute and shall be deemed to constitute, aa guarantee of the obligations of, and a "keepwell, support, or other agreement" for the benefit of the Company and each other Borrower for all purposes of Section 1a (18)(A)(v)(II) of the Commodity Exchange Act.

In furtherance of the foregoing, Guarantor represents and warrants that it constitutes an "eligible contract participant" under the Commodity Exchange Act and may cause another Person to qualify as an "eligible contract participant" with respect to such Swap Obligation at such time by entering into a keepwell under Section 1a(18)(A)(v)(II) of the Commodity Exchange Act.

As used in this Keepwell Addendum:

"Bankruptcy Code" means Title 11 of the United States Code, entitled "Bankruptcy," as now and hereafter in effect, or any successor statute.

"Commodity Exchange Act" means the Commodity Exchange Act (7 U.S.C. § 1 et seq.), as amended from time to time, and any successor statute.

"Debtor Relief Laws" means the Bankruptcy Code, and all other liquidation, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, reorganization, or similar laws providing debtor relief or otherwise affecting the enforcement of creditors' rights generally, of the United States or other applicable jurisdictions from time to time in effect.

"Swap Obligation" means any obligation to pay or perform under any agreement, contract or transaction that constitutes a "swap" within the meaning of Section 1a(47) of the Commodity Exchange Act.

Capitalized terms used but not defined in this Keepwell Addendum shall have the meaning ascribed to such terms in the Agreement defined in the Guaranty.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the undersigned has caused this Keepwell Addendum to be duly executed and delivered as of the date of the Guaranty.

CROSBY ENTERPRISES, LLC

_____
By: Kurt J. Crosby

Title: Member
